IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CRYSTAL LYNN MONTGOMERY,

      Plaintiff,

      v.

CAROLYN W. COLVIN[1], COMMISSIONER
OF SOCIAL SECURITY,

      Defendant.

12cv1356
ELECTRONICALLY FILED

## MEMORANDUM OPINION RE: PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 9 and 11)

**I. Introduction**

Plaintiff Crystal Lynn Montgomery ("Plaintiff") brings the present action pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have submitted cross-motions for summary judgment on the record developed at the administrative proceedings. After careful consideration of the Administrative Law Judge's ("ALJ") decision, the parties' memoranda, and the entire record, Plaintiff's Motion for Summary Judgment (Doc. No. 11) will be DENIED and Defendant's Motion for Summary Judgment (Doc. No. 9) will be GRANTED.

**II. Procedural History**

Plaintiff filed an application for DIB on February 10, 2009, and an application for SSI on February 28, 2009. Both applications were denied on May 11, 2009. R. 72-74. A hearing was

---

[1] Pursuant to Fed. R. Civ. P. 25(d).

1

held before an ALJ on August 4, 2010. R. 39. After an unfavorable decision from the ALJ, Plaintiff filed a request for Review of Hearing Decision on October 6, 2010, which was denied on July 16, 2012. R. 1-5. Plaintiff timely filed the instant lawsuit requesting judicial review. Plaintiff and Defendant filed cross-motions for summary judgment on February 4, 2013. Docs. Nos. 9 and 11. These Motions are the subject of this Memorandum Opinion.

### III. The ALJ's Decision

In a decision dated August 27, 2010, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2012. R. 24.

2. Plaintiff has not engaged in substantial gainful activity since January 30, 2009, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*). R. 24.

3. Plaintiff has the following severe impairments: right carpal tunnel residuals; a seizure disorder; asthma; bi-polar disorder; and a major depressive disorder (20 C.F.R. § 404.1520(c) and 416.920(c)). R. 24.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). R. 25.

5. Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following exceptions: she cannot be exposed to dangerous machinery and unprotected heights; she is limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in

a fast-paced production environment; and the work will involve no fine fingering with the right dominant hand. R. 26.

6. Plaintiff is unable to perform any past relevant work work (20 C.F.R. §§ 404.1565 and 416.965). R. 32.

7. Plaintiff was born on December 12, 1975, and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963). R. 32.

8. Plaintiff has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564 and 416.964). R. 32.

9. Transferability of job skills is not material to the determination of disability because using the Medicaid-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). R. 32.

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). R. 32.

11. Plaintiff has not been under a disability, as defined in the Social Security Act, from January 30, 2009, through the date of this decision ((20 C.F.R. §§ 404.1520 and 416.920(g)). R. 33.

## IV. Standard of Review

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46

(3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the Agency's

decision cannot be affirmed on a ground other than that actually relied upon by the Agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the United States Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## V. Discussion

In support of her Motion for Summary Judgment, Plaintiff argues that the ALJ erred in reaching her decision by: 1) improperly disregarding the medical opinions of Dr. Simmons and Dr. Eisler, 2) failing to find that Plaintiff has an impairment that meets or equals §§ 12.04 or 12.05 of the Listing of Impairments, 3) improperly determining Plaintiff's residual functional capacity, and 4) improperly disregarding the testimony of the vocational expert and relying on an incomplete hypothetical question. Doc. No. 12, 5-13. The Commissioner contends that Plaintiff's arguments are meritless, and that substantial evidence supports the ALJ's decision. Doc. No. 13.

*1. The Medical Opinions of Dr. Simmons and Dr. Eisler*

Although the ALJ should afford great deference to the reports of treating physicians, she can reject this evidence when there is contradictory medical evidence on the record. *Plumer v.*

*Afel*, 186 F.3d 422, 429 (3d Cir. 1999). The ALJ may also give more or less weight to a treating physician's opinion "depending upon the extent to which supporting explanations are provided." *Id.* Ultimately, "[t]he ALJ must consider all evidence and give some reason for discounting the evidence she rejects." *Id.*

Plaintiff has not received mental health counseling since approximately 1999. R. 334. After a psychiatric evaluation in 2001, Plaintiff saw Dr. Simmons approximately once every three months for medication management at the Irene Stacy Community Mental Health Center. R. 334, 378, and 648. In addition to preparing treatment notes, Dr. Simmons completed three questionnaires, sent by Plaintiff's counsel, about Plaintiff's medical conditions. R. 342, 381, and 652. Dr. Simmons opined that Plaintiff has: 1) marked restriction of activities of daily living, 2) marked difficulties in maintaining social functioning, 3) frequent deficiencies of concentration, persistence or pace, and 4) never had episodes of deterioration or decompensation. R. 342-47, 381-86, 652-57. Meanwhile, Dr. Eisler only met with Plaintiff once, at the urging of her counsel, and concluded that Plaintiff "will not be employable for the next year or more" because she has a Global Assessment of Functioning (GAF) Score of 30. R. 375.

The opinions of Dr. Simmons and Dr. Eisler are inconsistent with other evidence of record. For example, the ALJ accepted Plaintiff's testimony that she maintains her own residence, prepares her own meals, and takes care of pets. R. 44, 190, and 192. Plaintiff's testimony also indicates that she is able to maintain social functioning. She connects with former classmates on the computer. R. 642. She also met her new boyfriend online and spends significant amounts of time with him. R. 55. She shops for food, clothes, and household items. R. 192. As for concentration, persistence and pace, she paints and does latch work. R. 45.

The medical opinion of Dr. Croyle, who assessed Plaintiff on May 4, 2009, also contradicts the opinions of Dr. Simmons and Dr. Eisler. R. 387-90. After evaluating Plaintiff, Dr. Croyle concluded:

> [Plaintiff] can perform simple, routine, repetitive work in a stable environment. She can make simple decisions. She is able to carry out very short and simple instructions. She could be expected to complete a normal workday without exacerbation of psychological symptoms. . . She retains the capacity for employment in settings that minimized her contact with the general public. She is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene. Additionally, she is able to maintain socially appropriate behavior. She can sustain an ordinary routine without special supervision. Review of the medical evidence reveals that the claimant retains the abilities to manage the mental demands of many types of jobs not requiring complicated tasks.

R. 389. As the ALJ explained in her decision, she gave Dr. Croyle's opinion great weight because she found it to be consistent with most of the objective medical evidence on record. R. 31. Conversely, the ALJ explained that she gave little to no weight to the opinions of Dr. Simmons and Dr. Eisler because their opinions were inconsistent with most of the objective medical evidence on record. R. 31-32. The ALJ may decide how much weight to give a physician's opinion, and may even reject certain testimony, as long as she explains her reasons for discounting such evidence. Because the ALJ considered all of the medical evidence of record and adequately discussed how the objective medical findings were inconsistent with the medical opinions of Dr. Simmons and Dr. Eisler, substantial evidence supports the ALJ's decision to discount those doctors' medical opinions.

   2. *Finding an impairment that meets or equals §§ 12.04 or 12.05 of the Listing of Impairments*

The ALJ engages in a five-step process to determine whether a claimant has a disability. 20 C.F.R. §§ 404.1520(a) and 416.920(a). At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b) and 416.920(b). At step two, the ALJ must determine whether a claimant has a medical impairment that is

8

"severe," or a combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c) and 416.920(c). At the third step, the ALJ must determine whether a claimant's impairment, or combination of impairments, meets or equals the criteria of an impairment in the Listing of Impairments. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Plaintiff argues that the ALJ erred in her determination in this third step by failing to find that Plaintiff has an impairment that meets or equals §§ 12.04 or 12.05 of the Listing of Impairments. Doc. No. 12, 8-10.

### A. § 12.04 "B" Determination

For a claimant to meet the "B" criteria for Listing 12.04, Affective Disorders, her medical impairments must result in at least two of the following: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04B.

As discussed in Part V(1), *supra*, substantial evidence supports the ALJ's decision that Plaintiff does not meet the "B" criteria for Listing 12.04. Plaintiff relies upon the medical opinion of Dr. Simmons to prove that she satisfies at least two of the requirements in 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04B. Doc. No. 12, 8-9. However, Dr. Simmons' opinion was appropriately discounted in light of the overwhelming evidence of record indicating that Plaintiff has mild restrictions in daily living and moderate restrictions in the areas of social functioning and concentration, persistence, and pace.

9

### B. § 12.05 Determination

Listing 12.05, Mental Retardation, requires a claimant to show that she has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The regulations further explain that "the required level of severity for this disorder is met when the requirements in A, B, C, or D are met." *Id*. Plaintiff only contends that "C" and "D" criteria apply to this case.

To meet the "C" criteria for Listing 12.05, Plaintiff had to have a valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation or function. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C (emphasis added). In order to meet the "D" criteria for Listing 12.05, Plaintiff had to have a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05D.

Plaintiff argues that the ALJ erred by: 1) failing to evaluate whether Plaintiff met the Listing 12.05, specifically in regard to the "C" and "D" criteria, and 2) failing to conclude that Plaintiff did not meet these listings. Doc. No. 12, 10. Commissioner argues that the regulations required Plaintiff to satisfy both the diagnostic description in the introductory paragraph and one of the four sets of criteria that follow, which includes "C" and "D" criteria. Doc. No. 13, 8. The Court finds Commissioner's argument persuasive.

Although a 2008 assessment of Plaintiff yielded a verbal IQ score of 69, this assessment took place in 2008 when Plaintiff was well over the age of 22. R. 335. Further, Plaintiff testified that she was never enrolled in special education throughout the time she was in school. R. 45. Because a claimant must meet all of the specified medical criteria in order to meet a listing, (*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)), and because Plaintiff failed to meet any of the required criteria, the ALJ did not err when she failed to consider whether Plaintiff met Listing 12.05. Furthermore, Plaintiff's argument would essentially require the ALJ to consider every listing in the regulations, even if a claimant did not meet the threshold requirements. This is not required by law.

### 3. *Plaintiff's Residual Functional Capacity and the Hypothetical Question to the Vocational Expert*

The ALJ is required to determine the claimant's residual functional capacity, or her ability to perform physical and mental work activities on a sustained basis, despite her impairment(s). In making this determination, the ALJ poses hypothetical questions to a Vocational Expert. "The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy." *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). The hypothetical questions posed by the ALJ "must 'accurately portray' the claimant's impairments. . . [and the] expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" *Id*. at 554. In other words, the ALJ is not required to pose all of the limitations alleged by the claimant, and may only pose those limitations credibly established by the record. *Id*.

Plaintiff argues that the ALJ improperly determined Plaintiff's residual functional capacity and posed an incomplete hypothetical to the Vocation Expert. Doc. 12, 11-13.

However, the ALJ considered all of Plaintiff's limitations that were supported by the record, including, but not limited to, Plaintiff's inability to perform any fine fingering with the right hand due to carpal tunnel syndrome. R. 66-68. The ALJ properly discounted the other symptoms alleged by the Plaintiff because she did not find Plaintiff's testimony to be credible in this regard. R. 27. Substantial evidence supports the ALJ's findings concerning Plaintiff's lack of credibility. For instance, Plaintiff testified that she cannot count change, yet she previously worked as a cashier. R. 59, 165. Plaintiff also claimed she has difficulty walking due to her asthma, but testified that she frequently walks 15 minutes to her boyfriend's house. R. 56, 47.

## VI. Conclusion

Substantial evidence supports the ALJ's finding that Plaintiff has the residual functional capacity to perform work in the national economy, and is therefore not disabled. In light of the foregoing analysis, Plaintiff's Motion for Summary Judgment (Doc. No. 11) will be DENIED, and Defendant's Motion for Summary Judgment (Doc. No. 9) will be GRANTED. The decision of the Commissioner of Social Security is hereby AFFIRMED. An appropriate Order follows.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:  All Registered ECF Counsel and Parties